IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY RAY RUGG,

    Plaintiff,

v.                                                            No. 20-cv-353-WJ-KK

ALISHA LUCERO TAFOYA,
GERMAN FRANCO, L. RIVAS,

    Defendants.

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

THIS MATTER is before the Court on Plaintiff Anthony Ray Rugg's *pro se* Prisoner's Civil Rights Complaint. (Doc. 1) (the "Complaint"). Plaintiff is a prisoner in the custody of the New Mexico Department of Corrections ("NMDC"), housed at Lea County Correctional Facility ("LCCF"). He is proceeding *in forma pauperis*. Plaintiff claims that his rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated when he was removed from the general prison population and confined first in segregation and then in a Predatory Behavior Management program. Arising from the same events, he also seeks to state a malicious prosecution claim. Having reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915(e), the Court finds that the Complaint must be dismissed for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity to amend.

I.      Background.

For the limited purpose of this Memorandum Opinion and Order, the Court assumes, but does not decide, that the following facts taken from the allegations in the Complaint are true.

The complained of circumstances stem, originally, from an attack perpetrated upon an inmate named Nathan Lucero by a group of inmates in Plaintiff's housing pod. (Doc. 1 at 10). Plaintiff alleges that the prison official(s) identified as "STIU/K9" who investigated the attack accused him of orchestrating it. (Id.) Plaintiff denied the accusation, claiming to have no idea what happened to Lucero. (Id.). A few days later, unidentified prison officials moved Plaintiff to a restrictive housing unit where he was held in segregation. (Id.). He was given a placement form stating that he was on "prehearing detention status" pursuant to the STIU/K9's determination that he had participated in the attack on Lucero. (Id.). Later, Plaintiff received a misconduct report in which he was accused of assault or battery without a weapon on an inmate. (Id.).

Being placed in segregation affected Plaintiff's mental health. He alleges that his mental illnesses (paranoid schizophrenia, depression, anxiety) were controllable without medication when he was in general population—where he was able to work out, had contact with other inmates, and was in daily contact with his family. (Id. at 11). When he was placed in segregation, deprived of those things, his symptoms returned. (Id.). He requested medical and mental health care prison officials responded by resuming his medication within a few weeks. (Id.). This notwithstanding, the lack of contact with this family and the cessation of workouts affected Plaintiff's mental and physical health and he lost weight because he could not eat or sleep. (Id. at 11-12).

Plaintiff allegedly made numerous inquiries and submitted grievances seeking information about the status of the disciplinary proceedings against him. (Id. at 12). He received no responses. (Id.). Plaintiff alleges that a hearing should have been held before Lt. L. Rivas, the disciplinary officer. (Id). No such hearing was held. (Id.). After 111 days in segregation, Plaintiff's major misconduct report was dismissed without hearing. (Id.).

After the major misconduct report was dismissed, Plaintiff alleges that he received another form indicating that he was under investigation to determine whether he should be referred to Predator Management Behavior Program (PBMP). (Id. at 13). When Plaintiff was approved for and accepted into the PBMP, he was transferred from LCCF to Santa Fe. (Doc. 1 at 13). Plaintiff appealed the PBMP placement decision. (Id.). In his appeal, claimed he was being punished for something that was dismissed, and it was not justifiable to place him in PBMP when the misconduct report against him had been dismissed. (Id.). Plaintiff received a response from German Franco allegedly stating that Plaintiff's placement there was not a punishment, as PBMP was a "program." (Id. (quotation marks in original)). Plaintiff alleges that this explanation was contradicted later by an unidentified officer who stated, in response to a grievance submitted by Plaintiff, that his placement "fell under disciplinary proceedings" such that the grievance was improper. (Doc. 1 at 15).

Plaintiff alleges that the conditions in PBMP are punitive. They include 23 hour a day, five day a week lockdown, and complete lockdown on weekends and holidays (Doc. 1 at 14). He was handcuffed to and from a shower three times a week. (Id.). To go to the recreation yard, he was handcuffed to a strip cage, stripped thoroughly, placed in handcuffs again, and placed in a small, caged recreation area. (Id.). Commissary and telephone privileges were limited. (Id.). The guards variously ignored or refused to bring inmates items they requested. (Doc. 1 at 15-16). Living in these conditions allegedly caused Plaintiff's mental and physical health to decline, and he received a "bare minimum of help." (Id.).

In total, Plaintiff was held in segregation/PBMP for seventeen months. It appears that he was released from the PBMP before he filed the Complaint.

Based on the foregoing, Plaintiff claims that his rights to due process and to be free from cruel and unusual punishment were violated. He also seeks to state a claim for malicious prosecution.

II.   Analysis.

A.   Standard of Review.

As Plaintiff is proceeding *pro se* and *in forma pauperis* in this civil action, the Complaint must be screened under 28 U.S.C. § 1915(e). Under § 1915(e)(2)(B), the Court must dismiss a civil action *sua sponte* if the complaint "is frivolous, malicious[,]" "fails to state a claim on which relief may be granted[,]" or "seeks monetary relief against a defendant who is immune from such relief." A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Among other things, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court construes Plaintiff's pleadings "liberally" and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of *pro se* pleadings). This means that "if the court can reasonably read the pleadings to state valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements." *Id.* It does not mean, however, that the court should "assume the role of advocate for the pro se litigant." *Id.*

4

B. <u>Plaintiff's § 1983 Claims are Not Viable as Pled.</u>

Plaintiff seeks to state claims under 42 U.S.C. § 1983, which provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States. § 1983 allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. A § 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000). To plead a viable claim, a plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them particularly. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

1. <u>Plaintiff's Claims Against the Secretary of NMCD.</u>

Among the named Defendants is Alicia Tafoya Lucero, the Secretary of NMCD. As there are no allegations that Ms. Tafoya Lucero was personally involved in the events underlying the Complaint, it appears that Plaintiff seeks to sue her only in her official capacity. A suit against a "state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "As such, it is no different from a suit against the State itself." *Id.* And while Ms. Tafoya Lucero is, literally, a person, "neither a State nor its officials acting in their official capacities are 'persons'"

subject to liability under § 1983. *Id.* Any claims against Ms. Tafoya Lucero must be dismissed accordingly.

    2. <u>Plaintiff's Due Process Claims.</u>

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of life, liberty, or property. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies[.] *Wilkinson v. Austin*, 545 U.S. 209, 221, (2005) (citations omitted). The apparent import of Plaintiff's due process claim is that his placement in segregation in LCCF and then in PBMP without due process or an adjudication of guilt was unconstitutional. This claim is premised on the implicit notion that Plaintiff possessed a liberty interest in remaining in general population. "For inmates in state prisons, however, the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement[.]" *Est. of DiMarco v. Wyoming Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1339 (10th Cir. 2007) (internal quotation marks omitted); *Sandin v. Conner*, 515 U.S. 472, 480 (1995) ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed.").

In some circumstances, a state law, policy, or regulation may create liberty interest in freedom from restraint within a prison. *Sandin*, 515 U.S. at 483-84. Plaintiff has not identified any state law, policy, or regulation potentially giving him a right to due process before he was moved to segregation or PBMP and he has not alleged facts showing what process was due, but not afforded. *See Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 657 (10th Cir. 2006) (It is the Plaintiff's burden to show "a constitutional or statutory right was established by means of statute, regulation or under other due process considerations").

Nor has Plaintiff alleged facts demonstrating that the restriction "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (After *Sandin*, . . . . the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is . . . the nature of those conditions themselves in relation to the ordinary incidents of prison life." (Internal quotation marks omitted)); *Est. of DiMarco*, 473 F.3d at 1339 ("State policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. (Internal quotation marks omitted)). For example, Plaintiff has not pled facts indicating that the segregation and or PBMP were unrelated to a legitimate penological purpose, that the placement increased the duration of his confinement or that the placement was indeterminate—which, it appears, it was not. *See Est. of DiMarco*, 473 F.3d at 1342 (exemplifying indicia of atypical and significant hardship); *see also Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (while a plaintiff is not required "to plead, exhaustively, in the negative" by identifying every potential legitimate interest and pleading against it, he must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest").

Furthermore, certain facts in the Complaint indicate that Plaintiff's removal from general population was done for administrative, rather than disciplinary reasons. The Tenth Circuit Court of Appeals has held that "[g]enerally, the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore, administrative segregation is the sort of confinement inmates should reasonably anticipate receiving at some point in their incarceration

and does not involve an interest independently protected by the Due Process Clause." *Jordan*, 191 F. App'x at 650 (alterations and internal quotation marks omitted); *see also Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) ("[C]lassification of the plaintiff into administrative segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause.").

Finally, Plaintiff has not satisfied the who did what to whom pleading standard related to the due process claim. *Robbins.*, 519 F.3d at 1250. For example, the Complaint does not specify who decided or ordered that he be sent to segregation or to PBMP or specify how a particular defendant's individual conduct violated his constitutional rights.

For the foregoing reasons, Plaintiff's due process claim must be dismissed.

3.  <u>Plaintiff's Eighth Amendment Claim</u>.

The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

To prove that prison conditions amount to cruel and unusual punishment, the plaintiff must satisfy an objective requirement and a subjective requirement. That is, he must prove (1) that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities"; and (2) that the prison official's state of mind was one of "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In other words, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards

an excessive risk to innate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837.

Though the allegations in the Complaint refer to Plaintiff's mental and physical health, Plaintiff alleges that he received appropriate medical treatment when he requested it. As such, Plaintiff does not appear to seek to state a deliberate indifference claim. Rather, it appears that Plaintiff's claim is centered on the conditions of his confinement which, he appears to claim, were so restrictive that they amounted to cruel and unusual punishment.

The conditions that Plaintiff complains of, though restrictive, are comparable to those that have been held not to satisfy the objective element of an Eighth Amendment claim. *See e.g.*, *Ajaj v. United States*, 293 Fed. App'x 575, 582–84 (10th Cir. 2008) (finding conditions such as "lockdown for 23 hours per day," "limitations on ... access to telephones," and "limited ability to exercise outdoors" did not, individually or in concert, amount to an Eighth Amendment violation); *Hill v. Pugh*, 75 Fed. App'x 715, 721 (10th Cir. 2003) (finding no cruel and unusual punishment where inmate was "isolated in his cell twenty-three hours a day for five days a week and twenty-four hours the remaining two days"); *Silverstein v. Fed. Bureau of Prisons*, 559 Fed. App'x 739, 755 (10th Cir. 2014) (finding no violation where plaintiff had only had 10 hours per week of recreation time); *Smith v. Romer*, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997) (finding no violation stemming from 23-hour lockdown, limited vocational, educational, and recreational services, and exercise of one hour per day in cell).

Even if Plaintiff had satisfied the objective component, however, Plaintiff's Eighth Amendment claim would fail on the ground that subjective component is not satisfied. That is, the Complaint is devoid of allegations showing that any defendant was subjectively aware of, but

remained deliberately indifferent to, a serious risk to Plaintiff's health or safety. As the allegations in the Complaint satisfy neither the objective nor subjective components of an Eighth Amendment claim, the claim must be dismissed.

    4. Plaintiff's Malicious Prosecution Claim.

Assuming, without deciding, that a malicious prosecution claim can arise from a prison disciplinary action,[1] the allegations in the Complaint are insufficient to sustain the claim. In the Tenth Circuit,

> a § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). The allegations in the Complaint do not satisfy these elements. The claim must be dismissed accordingly.

    III.    Plaintiff May File an Amended Complaint.

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

    IT IS ORDERED:

    (1)    Each of the claims set forth in the complaint (Doc. 1) are DISMISSED without

---

[1] *See e.g., Klein v. Coblentz*, 132 F.3d 42 (Table), 1997 WL 767538, *5 (distinguishing a prison disciplinary proceeding from a criminal prosecution as to which the plaintiff raised a malicious prosecution claim); *cf. Greer v. DeRobertis*, 568 F. Supp. 1370, 1376 (N.D. Ill. 1983) ("Prison disciplinary hearings are not civil or criminal judicial proceedings on which malicious prosecution claims can be based.").

prejudice.

(2) Plaintiff is granted leave to file an amended complaint within thirty days of the entry of this Memorandum Opinion and Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE